**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Sanchez, | No. CV 07-1244-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Maricopa County, et al., | |
| Defendants. | |

Pending before the Court are Defendants' Motion to Strike (Doc. #64) and Motion for Summary Judgment (Doc. #51). The Court now rules on the motions.

**I.   BACKGROUND**

In the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). In support of his response opposing summary judgment (Doc. #60), Plaintiff has filed a separate statement of facts (Doc. #62), his affidavit (Doc. #61), the affidavit of his counsel, Mr. Poster (Doc. #61-2), and the affidavit of Sheri Castillo (Doc. #61-2). Plaintiff has also filed eight exhibits to his response (Doc. #s60-3 to 60-12).

One of these exhibits, the Notice of Claim (Doc. #60-10), contains Mr. Poster's recitation of facts and legal argument. While the Court has considered the Notice of Claim to determine whether it complies with Arizona's statutory requirements, the Court will not treat the Notice of Claim as substantive evidence relevant to the merits of the motion for

summary judgment. Arguments by counsel are not evidence.[1] Given that general preface, the following are the properly-supported facts viewed in the light most favorable to Plaintiff. *See Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004)("[[T]he Court construes all disputed facts in the light most favorable to the non-moving party.").

**Yates Shooting**

On June 24, 2006, the Phoenix police department responded to a shooting in an apartment at the Oasis Motel on 1501 West Grand Avenue. Someone had shot and killed Christopher Yates at the apartment of his friend Greg Chambers.

Prior to Yates's arrival at the Oasis apartment, Dyon Martinez, another friend of Chambers, had stopped by the apartment for a brief visit. After several minutes of conversation, Martinez left. A few minutes later, Yates knocked on Chambers's door. Chambers and Yates were visiting when, a short time later, the shooter knocked on the door.

When Chambers answered the door, a man pushed his way inside and instructed Chambers and Yates to get on their knees and hand over their money. Chambers complied, but Yates refused. The shooter then killed Yates. During the robbery and shooting, Chambers's girlfriend, Lila Nelson, was in the bathroom. She did not witness the robbery or shooting.

At the time of the incident, Chambers told the police that a Hispanic male had shot Yates. He also told them that he would be able to identify the shooter. On July 20, 2008, the police received a silent tip regarding the Yates murder. That tip led the police to Shara Cox, Yates's ex-girlfriend. Cox had heard rumors that a man named "Chris" who lived on Atlanta

---

[1] The Notice of Claim is not an affidavit or any other type of pleading. It is merely counsel's presentation of the case. If arguments by counsel alone could defeat a motion for summary judgment, then parties would never have to attach a single piece of supporting evidence. Further, the majority of the Notice of Claim relates facts of which Mr. Poster has no personal knowledge. And the Notice contains hearsay that relies on hearsay. *See* Fed. R. Civ. P. 56(e)("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence . . .").

1 Avenue, was approximately 17 or 18 years of age, had pock-marked skin, was a member of
2 the "Bloods" gang, and always carried a gun had shot Yates.

3 Because of the police department's investigation of the other shooting involved in this
4 case, the officer interviewing Cox, Defendant Weiss, thought Cox was describing Plaintiff
5 Christopher Sanchez. On July 21, 2006, Weiss presented Shara Cox with a photographic line
6 up that included Sanchez. Cox identified Sanchez as the man about whom Cox had heard
7 rumors. On the same day, Weiss presented a photographic line up that included Sanchez to
8 Chambers. Chambers studied the line up and identified Sanchez as the shooter. On October
9 19, 2006, Chambers confirmed that he was confident of his identification of Sanchez.
10 Chambers ultimately retracted his identification of Sanchez and instead, on December 6,
11 2006, identified Kenneth Vaughn as the shooter.

### Oliva Shooting

13 On June 25, 2006, Phoenix police responded to a call regarding a shooting at 2146
14 East Taylor Street. Someone had shot and killed Anthony Oliva in front of an apartment
15 complex there. Stormey Navarro/Oliva[2], the victim's sister, witnessed the shooting. Shayna
16 Navarro, another of the victim's sisters, also witnessed most of the altercation, although she
17 went inside briefly to call the police.

18 Both Stormey and Shayna told the police that they were outside with their brother,
19 Anthony Oliva, when a car pulled up with four passengers. They said that two females,
20 Alicia Oliva and Vangelina Gloria, were sitting in the back seat of the car. Alicia and
21 Vangelina are also sisters of the victim. Alicia's boyfriend, Christopher Sanchez, and Leo
22 Perez, Vangelina's husband, allegedly were in the front seats.

23 According to the witnesses on the scene, the two men exited the vehicle and one of
24 them fired five or six shots from a large assault rifle into the yard or into the air. Shayna

---

[2]Defendants give Stormey's last name as Oliva. Plaintiff gives Stormey's last name as Navarro. Because the Court has no way of resolving the conflict, it will refer to her as Stormey.

- 3 -

originally stated that Sanchez fired those shots, but Stormey insisted that Leo Perez fired off those first shots. After those shots, Oliva and Perez got into a physical fight.

The sisters told the police that at some point during the fight, Perez shoved Oliva to the ground. Perez then shot Oliva once. Perez then handed the gun to Sanchez who shot Oliva multiple times. When police arrived on the scene, Stormey gave a photo of Sanchez to the police and identified him as one of the shooters. The back of the photo had the following written on it: "Chris," "C-Loc," "Lisa's homeboy," and "south side Phoenix gang."

Alicia Oliva, Sanchez's girlfriend and the victim's sister, told police that the four went to Oliva's apartment, but that Perez shot Oliva. Juan Torrez, a person at the scene, told police that he could not tell if Perez, Sanchez, or both shot Oliva. Sanchez's parents told police that Sanchez might have been at home at the time of the shooting, but their statements somewhat contradicted each other.

On July 24, 2006, believing he was a suspect, Sanchez self-surrendered at the police station. His lawyer, Mr. Poster, accompanied him to the station. After a few minutes of conversation, the police arrested Sanchez. Either at the time of or right after Sanchez's arrest, Mr. Poster handed an officer a letter and asked him to read it. The officer told Mr. Poster that he did not have time to read the letter at that moment. Mr. Poster asked to accompany Sanchez during his booking, but the officers refused the request.

The letter contained the following language:

> 1. I know who implicated Mr. Sanchez, and I know that person lied to you concerning Mr. Sanchez and any involvement he had.
> 2. I am informing you that I can produce four (4) alibi witnesses who can testify that Mr. Sanchez was with them during the time this shooting occurred. All of these people, and Mr. Sanchez were at another location when the shooting occurred. Additionally, I can produce other witnesses who can testify as to Mr. Sanchez's whereabouts both before and after the shooting occurred.

(Ex. A to Response, Doc. #60-3).[3]

Maricopa County prosecutors brought two separate Grand Jury proceedings against Plaintiff for the Yates and Oliva murders. The Grand Juries indicted Sanchez for both murders and the Superior Court issued warrants for his arrest. Prosecutors eventually dismissed, without prejudice, the Oasis Motel murder case against him.

Plaintiff filed his Complaint in state court on May 31, 2007. The City Defendants removed the case to this Court on June 26, 2007 (Doc. #1). The County Defendants answered the Complaint in this Court on the same day (Doc. #2), and filed a Notice of Consent to Removal on July 5, 2007 (Doc. #10). The Court granted the County Defendants' motion to dismiss on October 2, 2008 (Doc. #33).

## II. MOTION TO STRIKE

Defendants have filed a motion to strike Plaintiff's Separate Statement of Facts in Support of His Response to Defendants' Motion for Summary Judgment (Doc. #64). Defendants argue that Plaintiff's entire statement of facts should be stricken because it does not comply with Local Rule of Civil Procedure 56.1. Defendants further argue that portions of the statement of facts should be stricken pursuant to Federal Rule of Civil Procedure 12(f) because they are immaterial, impertinent, and/or scandalous.

Local Rule of Civil Procedure 56.1(b) requires:

> Any party opposing a motion for summary judgment shall file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position that the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact shall be set forth in a separately numbered paragraph and shall

---

[3] Plaintiff submitted a letter as Exhibit A to his response to the motion for summary judgment. The letter is not attached to an attesting affidavit. The Court therefore assumes it is the letter Mr. Poster handed the officer at the time of Sanchez's arrest.

- 5 -

>refer to a specific *admissible* portion of the record where the fact finds support.

(emphasis added). Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading an insufficient defense or "any redundant, immaterial, impertinent, or scandalous matter."

Plaintiff filed a separate statement of facts, but he did not specifically refute Defendants' statement of facts in numbered paragraphs, as required by Local Rule 56.1(b). Nor does Plaintiff's statement of facts cite to record evidence, let alone to admissible record evidence. Instead, Plaintiff's statement of facts cites to his response. His response then, in large part, cites back to the statement of facts. In this method of circular citation, Plaintiff does not adequately cite to record evidence. Nonetheless, he has filed exhibits to his response and has separately filed affidavits.

Plaintiff's statement of the facts falls woefully short of meeting the requirements of Local Rule of Civil Procedure 56.1(b). The statement of facts does not refute Defendants' separately numbered undisputed facts. And the statement of facts does not cite to record evidence. Plaintiff does cite to the exhibits and affidavits in some paragraphs of his response.

To avoid summary judgment, the non-moving party must present "'significant probative evidence tending to support'" its allegations. *Bias v.* Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (quoting *Gen. Bus. Sys. V. N. Am. Philips Corp.*, 699 F.2d 965, 971 (9th Cir. 1983)). If the non-moving party's papers fail to either cite to materials in the court's record or cite to materials not included in the court's record, the court is not required to either scour the entire record for evidence establishing a genuine issue of fact or obtain the missing materials. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988).

The Defendants correctly argue that Plaintiff's statement of facts does not comply with the rules. The Court could strike the statement of facts for this failure and order

Plaintiff to re-file the statement of facts and response. But in the interest of time and judicial economy, the Court will deny the motion to strike for failure to follow Local Rule of Civil Procedure 56.1(b). Moreover, the Court has read all the exhibits and the affidavits and would reach the same result even if Plaintiff had correctly cited to those exhibits and affidavits in his statement of facts.

The Court, however, will grant Defendants' motion pursuant to Federal Rule of Civil Procedure 12(f) to strike certain paragraphs of the statement of facts. In paragraphs 22 through 32 of his statement of facts, Plaintiff relates facts that occurred after he filed his complaint.[4] None of these events are relevant to the present action. Because Plaintiff's allegations regarding conduct by other police officers that occurred after he filed his complaint are completely immaterial, the Court will grant Defendants' motion to strike paragraphs 22 through 32 of the statement of facts. Further, the Court will not consider any allegations made in those paragraphs when deciding the motion for summary judgment.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. State Law Claims

Plaintiff has alleged several state law claims against Defendants. In Arizona, a person with a claim against a public entity or a public employee must file claims with "the person or persons authorized to accept service for the public entity or public employee . . . within one hundred eighty days after the cause of action accrues." A.R.S. §12.821.01(a). The claim must "contain facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed." *Id*. It must also contain "a specific amount for which the claim can be settled *and the facts supporting that amount*." *Id*. (emphasis added). If a party fails to file such a claim within one hundred eighty days after the cause of action accrues, then the claim is barred. *Id*.

---

[4] Plaintiff has not moved to amend his Complaint.

- 7 -

Plaintiff served the City of Phoenix with the Notice of Claim at issue on January 19, 2007 (Doc. #51, Ex. 8). Plaintiff did not serve the claim on Defendants Weiss or Barnes. Defendants argue that the Court should dismiss all state claims against Weiss and Barnes because Plaintiff failed to timely serve them with the Notice of Claim.

Well settled Arizona law requires parties to serve a notice of claim on a public employee, as well as the public entity, for claims arising from the public employee's alleged acts. *Johnson v. Superior Court*, 763 P.2d 1382, 1384 (Az. Ct. App. 1988). "When a person asserts claims against a public entity and public employee, the person 'must give notice of the claim to *both* the employee individually and to his employer.'" *Harris v. Cochise Health Sys.*, 160 P.3d 223, 230 (Az. Ct. App. 2007) (emphasis in the original) (quoting *Crum v. Superior Court*, 922 P.2d 316, 317 (Az. Ct. App. 1996)). Compliance with the notice-on-the-individual requirement of A.R.S. §12.821.01(a) is a mandatory and essential prerequisite to maintaining a suit against the individual. *See id*. (internal citations omitted).

In his response, Plaintiff states that a "Blake McGinnis" called the City of Phoenix to inquire about the procedures for serving a notice of claim. (Resp., Doc. #60, p. 17). Plaintiff has not submitted the affidavit of a Blake McGinnis to support his hearsay evidence. The Court assumes McGinnis used to or currently does work for Plaintiff's counsel. An unidentified City employee allegedly told McGinnis that the City would accept only one notice of claim and that the City would make the appropriate copies and serve the appropriate persons.

Plaintiff argues that the statute, "merely provides that a notice of claim be filed with the entity *or* employee as set forth in the Arizona Rules of Civil Procedure." (Doc. #60, p.17). He contends that the City could accept service on behalf of the officers and that if the officers did not receive a copy of the Notice of Claim, it was because the City did not follow its own procedures. Plaintiff further argues that Weiss and Barnes had actual notice of the claims against them, which cured any deficiency in notice.

1    First, Plaintiff has evidentiary problems with the "McGinnis" claims because Plaintiff 2 has not submitted a McGinnis affidavit. The statements regarding the phone conversation 3 with an unidentified City employee are unattested hearsay. Second, regardless of the 4 evidentiary problems and what a lay person may have told Plaintiff's counsel's employee, 5 Plaintiff's counsel was charged with knowledge of the claims statute and its notice 6 requirements. *City of Tucson v. Fleischman*, 731 P.2d 634, 638 (Ariz. Ct. App. 1986). And 7 Arizona law has long held that the notice statute requires notice on the individual employee 8 *and* his employer. *See, e.g., Johnson*, 763 P.2d at 1384. Third, neither actual notice nor 9 substantial compliance cures a failure to comply with the claims statute's notice provisions. 10 *Harris*, 160 P.3d at 230.

11    Although the Court finds that Plaintiff did not meet the notice requirements for the 12 claims against the individual Defendants, the Court need not decide the motion on that issue 13 because it concludes the Notice of Claim was insufficient as to all the City Defendants. 14 Plaintiff filed a twelve-page Notice of Claim with the City, but only one sentence of that 15 Notice addresses the amount for which Plaintiff would settle the claim. The last sentence of 16 the Notice of Claim reads, "Mr. Sanchez is willing to settle this claim for twenty million 17 dollars ($20,000,000.00)." (Doc. #51, Ex. 8).

18    The notice of claim statute provides that a notice shall contain "a specific amount for 19 which the claim can be settled *and the facts supporting that amount*." A.R.S. 20 §12.821.01(a)(emphasis added). The statutory obligation to provide facts supporting the 21 amount for which a claimant will settle "requires that claimants explain the amounts 22 identified in the claim by providing the government entity with a factual foundation to permit 23 the entity to evaluate the amount claimed." *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 24 152 P.3d 490, 493 (Ariz. 2007)(en banc). The supporting facts requirement "ensures that 25 claimants will not demand unfounded amounts that constitute 'quick unrealistic exaggerated 26 demands.'" *Id.* (quoting *Hollingsworth v. City of Phoenix*, 793 P.2d 1129, 1133 (Az. Ct. App. 27 1990)).

28

- 9 -

Plaintiff's Notice of Claim's single sentence demanding $20,000,000 is the sort of quick, exaggerated demand the statute was designed to prevent. *See id.* Plaintiff's bald demand did not provide Defendants with any basis for evaluating the amount of the demand. For instance, Plaintiff does not list any lost wages, salary, or income, or any medical expenses, any legal expenses, or any other specific amounts of damages. While Plaintiff has made some very serious accusations of misconduct, he has not provided any information that would support such an exorbitant amount of damages.

Because Plaintiff's Notice of Claim contained no facts supporting his $20,000,000 settlement demand, the Court will grant Defendants' motion for summary judgment on all the state claims.

**B.  Constitutional Claims**

In Counts 3 and 7 of his Complaint, Plaintiff alleges that Defendants violated his following constitutional rights: right to counsel, due process of law, equal protection of the law, and the right to be free from unreasonable seizure. (Compl. ¶¶66&96). Plaintiff alleges the following facts against the City Defendants in support of his constitutional claims: 1) Defendant Weiss arrested Plaintiff upon his self surrender without a warrant; 2) Plaintiff's counsel gave the arresting officers a letter regarding unidentified alibi witnesses; and 3) the officers did not allow Plaintiff's attorney to accompany him during the booking process.[5]

Defendants argue on summary judgment that the police did not violate Plaintiff's Fourth Amendment rights because they had probable cause to arrest Plaintiff as a matter of law. Even if probable cause did not exist as a matter of law, Defendants contend that the

---

[5]Plaintiff made other allegations in his Complaint that he has not supported in his response to the motion for summary judgment. Plaintiff cannot fall back on his pleadings to survive a motion for summary judgment. A party opposing summary judgment must "go beyond the pleadings and, by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

1 Grand Jury's indictments of Plaintiff established a legal presumption of probable cause, which Plaintiff has not rebutted.

Defendants also argue that Plaintiff had no Sixth Amendment right to counsel during his booking. *See Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986) (holding that Plaintiff did not have a Sixth Amendment right to counsel during his booking process).

Regarding Plaintiff's due process claim, Defendants argue that he has not indicated which conduct he alleges violated due process. But even if he had specified, Defendants argue that the police officers conduct did not amount to arbitrary action, the touchstone of a due process inquiry. *See County of Sacramento v. Lewis*, 523 U.S. 823, 845 (1998) ("The touchstone of due process is protection of the individual against arbitrary action of government.") (internal citations omitted).

Defendants further argue that Plaintiff has made no factual allegations of unequal protection under the laws, not even the most basic allegation that he is a member of a protected class or that he has been treated differently because of his class. *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1195)(outlining basic elements of an equal protection claim).

Finally, Defendants argue that the City cannot be liable under Section 1983 on a *respondeat superior* theory. *See, e.g., Gobel v. Maricopa County*, 867 F.2d 1201, 1206 (9th Cir. 1989). And Plaintiff has not alleged that the City injured him pursuant to an official policy or custom. Nor has Plaintiff alleged that the City failed to train, supervise, or discipline its employees. *See City of Canton v. Harris*, 489 U.S. 378, 387 (1989) (holding that a failure to train may serve as a basis for §1983 liability against a municipality, but only when the failure to train amounts to deliberate indifference to the rights of the persons who come in contact with the police).

The following constitutes Plaintiff's entire response to Defendants' motion for summary judgment on the constitutional claims:

- 11 -

|   |   |
|---|---|
| 1 |         3.     Constitutional Claims |

        58.     The Defendants also erroneously claim that the Plaintiff's Constitutional claims must fail as unsupported by law and fact.
        59.     On the contrary, constitutional violations, especially those grounded in fact, are simply the Defendant's admission that yet another factual dispute exists, and another reason to deny their Motion.

        60.     Apparently, the Defendants failed to recall that the Plaintiff was arrested without a valid arrest warrant and not charged until approximately two days later.

        61.     As a result of Defendants' actions, the Plaintiff was deprived of his Constitutional rights because he was illegally seized without probable cause; arguably such probable cause was not initially established until August 2, 2006 when the first grand jury improperly and wrongfully indicted the Plaintiff based on the Defendants' actions.

        62.     Therefore, because the Plaintiff's Constitutional claims are valid and remain in a factual dispute, the Defendant's Motion for Summary Judgment must be denied.

(Doc. #60, p.16).

If a non-moving party only partially responds to a motion for summary judgment, then the party abandons the claims that it does not address in its opposition to the motion. *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)(stating that the plaintiff abandoned two of her claims by not raising them in opposition to the motion for summary judgment).[6] Plaintiff responds to Defendants' arguments regarding his Fourth Amendment unreasonable arrest claim in the section of his brief dedicated to the constitutional claims. And in another portion of his response he makes a rather oblique comment about lack of due process. (Doc. #60, p. 15). But Plaintiff never refutes Defendants' arguments for summary judgment on his Sixth Amendment claim, his equal protection claim, or on his municipal liability claim. The Court therefore deems Plaintiff to have waived his claims for violation of his right to counsel, to equal protection, and any

---

[6] See also *Grenier v. Cyanamid Plastics*, 70 F.3d 667, 677 (1st Cir.1995) ("[A]n issue raised in the complaint but ignored at summary judgment may be deemed waived.")

1 claims against the City of Phoenix. The Court grants summary judgment to Defendants on
2 those claims.

3 In paragraph 56 of his response, Plaintiff states that the falsification of evidence
4 violates due process. But Plaintiff has presented no evidence that would create an issue of
5 fact regarding the officers' falsification of evidence.[7] Plaintiff makes no other arguments
6 regarding his due process claim. The Court therefore grants Defendants' motion for
7 summary judgment on Plaintiff's due process claim.

8 That leaves only Plaintiff's Fourth Amendment claim against the officers.[8] Plaintiff
9 argues that the officers arrested him without a valid warrant and thereby illegally seized him
10 without probable cause. Defendants do not dispute that the police did not have a warrant for
11 Plaintiff's arrest at the time of his self surrender. "A warrantless arrest must be supported
12 by probable cause." *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990). If
13 probable cause exists, then no violation of the Fourth Amendment can occur. *Skoog v.*
14 *County of Clackamas*, 469 F.3d 1221, 1231 (9th Cir. 2006).

15 Whether probable cause exists depends on the facts known to the arresting officer at
16 the time of the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). If the facts known at
17 that time suggest a "fair probability" that the suspect committed a crime, then the officer has
18 probable cause to make an arrest. *Tatum v. City and County of San Francisco*, 441 F.3d

---

[7] As stated earlier, Plaintiff cannot rely on his attorneys' double hearsay arguments in the Notice of Claim to create an issue of fact. Nor can Plaintiff fall back on the allegations in his Complaint. *Bias*, 508 F.3d at 1218 (holding that a party opposing summary judgment must "go beyond the pleadings and, by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (internal citations omitted).

[8] Plaintiff alleges that Defendant Weiss arrested him, but he does not allege that Defendant Barnes had anything to do with his arrest. The Court therefore cannot see how Plaintiff could proceed against Defendant Barnes on an unlawful seizure theory.

- 13 -

1090, 1094 (9th Cir. 2006). The officer's subjective reasons for making the arrest do not matter. *Devenpeck*, 543 U.S. at 153.

The following are the record facts known to the officers at the time of Plaintiff's arrest:[9]

- On 6/24/08 or 6/25/08, Chambers tells police that a Hispanic male robbed him and his friend Christopher Yates and then shot Yates.
- On 6/25/08 or 6/26/08, Stormey Oliva gives the police a picture of Plaintiff and tells them that Plaintiff shot her brother, Anthony Oliva.
- On 7/20/08, the police receive a silent tip that a man named "Chris" had shot Yates.
- On 7/21/08, Chambers identifies Plaintiff in a photo line-up as the man who shot Yates.
- Presumably at some point before his arrest, Plaintiff's parents tell the police that Plaintiff might have been home at the time of the Oliva shooting.
- On 7/24/08, Plaintiff self surrenders at the police station.

The police had not read the letter given to them by Mr. Poster at the time they arrested Plaintiff. Even if the police had read the letter, Mr. Poster's statement that Plaintiff had unidentified alibi witnesses would not have had any impact given the eye witnesses' identification of Plaintiff as the shooter in the two murders.[10] None of the witnesses had recanted their identifications at the time of the arrest.

As stated earlier, the Court will not consider the contents of the Notice of Claim as substantive evidence in this case, nor will it treat the allegations in the Complaint as true at the summary judgment stage. Even if the Court did consider that evidence, the only possibly relevant pieces of evidence known to police at the time of the arrest would be (1) Lila

---

[9] Plaintiff has not created a material issue of fact regarding any of these events.

[10] The letter does not even indicate for which of the two murders he was "falsely implicated."

- 14 -

Nelson's testimony that based on the voice she heard while in the bathroom, she thought the shooter was black and (2) Dyon Martinez's testimony that she had never seen Plaintiff before. Neither Nelson nor Martinez was in the room when Yates was shot. The only person that was in the room, Chambers, identified Yates as the shooter.[11]

All the facts known to the officers at the time of the arrest, especially the eye witness identifications of Plaintiff, suggested as a matter of law at least a "fair probability" that Plaintiff committed the Yates and Oliva murders. The fact that the County later dropped the charges against Plaintiff does not alter this determination. *Rodriguez v. Ritchey*, 556 F.2d 1185, 1190-91 (5th Cir. 1977); *Hockett v. City of Tucson*, 678 P.2d 502, 505 (Ariz. Ct. App. 1984). The Court therefore grants Defendants' motion for summary judgment on the Fourth Amendment claims.[12]

**C. Damages Claims**

Plaintiff's Counts Five and Six do not state separate causes of action, but, rather, seek special types of damages. Because the Court has granted summary judgment to Defendants on all of Plaintiff's substantive claims, no damages can lie.[13] The Court therefore grants summary judgment to Defendants on Counts Five and Six.

---

[11] Well after Plaintiff's arrest, Chambers recanted his testimony and identified another man as the shooter.

[12] The Court earlier granted Defendants' motion for summary judgment on all constitutional claims against the City because Plaintiff failed to respond to Defendants' arguments. The Court additionally grants the motion on all constitutional claims against the City because where, as here, no constitutional violation occurred, a municipality cannot be held liable. *Long v. City and County of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007).

[13] The Court additionally notes that Plaintiff could not have recovered punitive damages in any case on the state law claims or against the City on the constitutional claims. *See* A.R.S. §12-820.04 ("Neither a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages."); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. §1983.").

1  Accordingly,

2  IT IS ORDERED GRANTING Defendants' Motion for Summary Judgment (Doc.
3  #51).

4  IT IS FURTHER ORDERED GRANTING in part and DENYING in part Defendants'
5  Motion to Strike (Doc. #64). The Motion to Strike is granted with regard to paragraphs 22
6  through 32 of the Plaintiff's Separate Statement of Facts and denied in all other respects.

7  IT IS FURTHER ORDERED that any remaining pending motions are denied as moot.

8  DATED this 27th day of August, 2008.

_____
James A. Teilborg
United States District Judge